IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-505-RJC-DCK

| | |
|---|---|
| VERNON BOYTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| XEROX COMMERCIAL SOLUTIONS, ) | |
| LLC; AFFILATED COMPUTER ) | |
| SERVICES, LLC; and CONDUENT ) | |
| BUSINESS SERVICES, LLC; ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Second Motion To Compel Arbitration And Dismiss Or In The Alternative, To Stay Proceedings Pending Arbitration" (Document No. 13). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

**I. BACKGROUND**

*Pro se* Plaintiff Vernon Boyton ("Plaintiff") initiated this action by filing a "Complaint" (Document No. 1) on August 21, 2017. In the Complaint, Plaintiff asserts that Defendants Xerox Commercial Solutions, LLC, Affiliated Computer Services, LLC, and Conduent Business Services, LLC ("Defendants") did not select him for a job promotion because of his race and because he requested reasonable accommodations for his disability. (Document No. 1, p. 3). Accordingly, Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of 1964,

Title I of the Americans with Disabilities Act of 1990, and the Age Discrimination in Employment Act of 1967. (Document No. 1, p. 3).

On October 16, 2017, Defendants filed "Defendants' Motion To Compel Arbitration And Dismiss Or In The Alternative, To Stay Proceedings Pending Arbitration" (Document No. 9). On November 1, 2017, the undersigned issued an Order (Document No. 12) denying that motion as moot because Plaintiff had filed an "Amended Complaint" (Document No. 11) on October 30, 2017. However, the November 1, 2017, Order also stated that the denial was "without prejudice to Defendant re-filing a similar motion in response to [Plaintiff's] 'Amended Complaint.'" (Document No. 12, p. 2).

The "Amended Complaint" (Document No. 11) that Plaintiff filed on October 30, 2017, repeats the allegations of the initial "Complaint" and then moves, among other things that: (1) Defendants "produce Plaintiff's 'wet signature' on any arbitration agreement that may have been signed as a matter of employment;" and (2) this Court stay consideration of Defendants' motion to compel arbitration until this Court holds a hearing on Defendants' "attorney Mary Jo L. Roberts['] unauthorized practice of law in North Carolina." (Document No. 11, p. 4). Plaintiff's attempt to have this Court hold a hearing on Roberts' alleged unauthorized practice of law in North Carolina comes despite the undersigned's *pro hac vice* admission of Roberts to represent Defendants in this Court on September 18, 2017. (Document No. 8, p. 1). Moreover, in the November 1, 2017, Order, the undersigned advised Plaintiff that to "the extent [Plaintiff's] Amended Complaint attempts to assert any motions for … relief, such as document production, Plaintiff must file a separate motion and supporting brief." (Document No. 12, p. 2) (citing Local Rule 7.1).

2

Case 3:17-cv-00505-RJC-DCK   Document 25   Filed 07/31/18   Page 2 of 14

On November 13, 2017, "Defendants' Second Motion To Compel Arbitration And Dismiss Or In The Alternative, To Stay Proceedings Pending Arbitration" (Document No. 13) was filed. In support of this motion, Defendants argue that because "Plaintiff agreed [under a Dispute Resolution Plan] to solve any and all employment-related disputes … through arbitration … the proper venue for this claim is arbitration rather than any court." (Document No. 13-1, pp. 2-3); see also (Document No. 13-4) (the Dispute Resolution Plan); (Document No. 13-6) (the agreement to be bound by the Dispute Resolution Plan).

Defendants' filing of their "…Second Motion To Compel Arbitration And Dismiss..." prompted the undersigned to issue an Order (Document No. 14) in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). This Order advised Plaintiff that he had a right to respond to "Defendants' Second Motion To Compel Arbitration And Dismiss..." on or before November 27, 2017. (Document No. 14, p. 1). Further, the Order advised Plaintiff that failure to file a timely response to "Defendants' Second Motion To Compel Arbitration And Dismiss..." could result in the dismissal of Plaintiff's Amended Complaint. (Document No. 14, p. 1).

To date, Plaintiff has failed to file a response to the pending "…Motion To Compel Arbitration And Dismiss...." On November 27, 2017, Plaintiff did file a "Motion … for a Temporary Restrain[ing] Order" (Document No. 15).[1] Through this motion, Plaintiff seeks "to engage the office of the Ombudsman as provided for in the Dispute Resolution Plan." (Document No. 15, p. 2); see also (Document No. 13-4, p. 8-9); (Document No. 13-8 p. 4) (excerpts from the Xerox Services Employee Guidebook). The Dispute Resolution Plan ("DRP") to which Plaintiff refers is the same document that Defendants point to in contending that Plaintiff is required to arbitrate his claim. (Document No. 13-1, pp. 3-5); see also (Document No. 13-4). Plaintiff's

---

[1] The undersigned does not construe this filing as a response to the pending motion to compel arbitration, nor may a party include a motion in a responsive brief. See Local Rule 7.1(c)(2).

"Motion … for a Temporary Restrain[ing] Order" also addresses Defendants' second motion to compel arbitration, asserting that his "engagement in seeking the Office of the Ombudsman will effectively render Defendant's motion to compel arbitration moot." (Document No. 15, p. 3).

On December 11, 2017, Defendants filed an "Opposition Memorandum to Plaintiff's Motion for Temporary Restrain[ing] Order" (Document No. 16). In their memorandum, Defendants argue that Plaintiff's motion for a temporary restraining order ("TRO") should be denied because the motion does not set forth the proper prerequisites for a TRO, nor does the motion properly oppose their second motion to compel arbitration. (Document No. 16, p. 2).

On January 2, 2018, Plaintiff filed an "Answer to Defendant's Opposition Memorandum for Temporary Restrain[ing] Order" (Document No. 17).[2] This filing cites provisions of the DRP in an attempt to support Plaintiff's contention that he is entitled to a TRO. (Document No. 17, pp. 2-3) (citing Document No. 13-4, pp. 8-10, 20). In addition, Plaintiff renews his allegation that Roberts has engaged in professional misconduct. (Document No. 17, pp. 4-7). While renewing his allegation against Roberts, Plaintiff also discusses the DRP. Among other things, Plaintiff writes that

> [t]here ha[s] not been any evidence presented to the court that actual[ly] shows that Plaintiff has refused to submit to arbitration. In fact the evidence shows to the contrary that Plaintiff did in fact agree to arbitration.

(Document No. 17, p. 6). Despite this language, Plaintiff concludes the filing by requesting that this Court deny Defendants' second motion to compel arbitration based on the provisions of the DRP that allegedly entitle him to a TRO. (Document No. 17, p. 8).

---

[2] Because Plaintiff filed this reply more than seven days after "Defendants' Opposition Memorandum to Plaintiff's Motion for Temporary Restrain[ing] Order" (Document No. 16) was filed, the reply violates Local Rule 7.1(e).

Two weeks later, on January 16, 2018, Plaintiff filed a "Motion to Dismiss Xerox's Dispute Resolution Plan Due [t]o Breach of Contract …" (Document No. 18). Plaintiff bases this breach-of-contract claim on an allegation that Defendants terminated Plaintiff's employment in violation of federal law and regulations. (Document No. 18, pp. 2-3).

On January 30, 2018, Defendants responded to Plaintiff's January 16, 2018, motion with an "Opposition Memorandum to Plaintiff's Motion to Dismiss Xerox's Dispute Resolution Plan due to Breach of Contract" (Document No. 19). Defendants' memorandum asserts that the breach of contract that Plaintiff alleges is subject to arbitration under the DRP. (Document No. 19, pp. 3-4). In addition, the memorandum attempts to persuade this Court to issue an order requiring the Parties to obtain leave of the Court before filing additional motions. (Document No. 19, pp. 4-5).

On February 7, 2018—the day after Plaintiff's deadline to file a reply in support of his January 6, 2018, "Motion to Dismiss Xerox's Dispute Resolution Plan Due [t]o Breach of Contract …" — Plaintiff made a filing that he styled "Defamation of Character, Slander, Libel Negligence and Intentionally [*sic*] Infliction of Emotional Distress" (Document No. 20). On the same day that Plaintiff made this filing, the undersigned, unsure of what exactly Plaintiff sought to accomplish by it, denied the filing without prejudice. (Document No. 21). In denying the filing, the undersigned also advised Plaintiff how to properly seek to further amend his Complaint. (Document No. 21, p. 2).

On February 20, 2017, Plaintiff filed a "Response To Defendant[s'] Opposition Memorandum To Plaintiff's Motion To Dismiss Xerox's Dispute Resolution Plan Due [T]o Breach Of Contract" (Document No. 22).[3] In this filing, Plaintiff argues, on the one hand, that

---

[3] Because Plaintiff filed this reply more than seven days after "Defendants' Opposition Memorandum to Plaintiff's Motion to Dismiss Xerox's Dispute Resolution Plan due to Breach of Contract" (Document No. 19) was filed, the reply violates Local Rule 7.1(e).

5

"the DRP is a legal and valid contract" and that this Court should "deny Defendant[s'] motion to compel arbitration based on the written provision of the DRP [that allows for the grant of] a temporary restraining order." (Document No. 22, p. 3, 6). But Plaintiff also argues, on the other hand, that this Court should find, based on Defendants' "grievous act" of terminating Plaintiff's employment, that the DRP is "illusory and unconscionable and therefore unenforceable." (Document No. 22, p. 7). Plaintiff does not point to any specific DRP provisions that this Court should find unenforceable. Plaintiff thus seems to argue that this Court should enforce one provision of the DRP but also find the DRP unenforceable as a whole. (Document No. 22, pp. 6-7).

In light of the foregoing, "Defendants' Second Motion To Compel Arbitration And Dismiss Or In The Alternative, To Stay Proceedings Pending Arbitration" is ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Robert J. Conrad, Jr., is now appropriate.

## II.  STANDARD OF REVIEW

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate disputes "are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In general, the FAA reflects "a liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). In line with this policy, courts must "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

The FAA allows for a party to an agreement to arbitrate to move for a court to issue an order compelling arbitration. 9 U.S.C. § 4. In the Fourth Circuit, a court will issue such an order

"if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." Chorley Ents., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002). Nonetheless, a federal district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Id. at 500. And furthermore, "due regard must be given to the federal policy favoring arbitration, [with] ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id.

### III. DISCUSSION

In moving to compel arbitration and dismiss Plaintiff's Amended Complaint, Defendants argue that the parties' agreement to arbitrate is valid and enforceable, and that Plaintiff's claims are within the scope of that agreement. (Document No. 13-1, pp. 8-13). Defendants also request— pursuant to Fed.R.Civ.P. 11 —t hat this Court award them "the reasonable costs and attorneys' fees incurred in the drafting and filing of [their] Motion to Compel based on Plaintiff's unjustified refusal to honor his agreement and arbitrate his workplace disputes." (Document No. 13-1, p. 15); see also Fed.R.Civ.P. 11. The undersigned agrees with Defendants that the parties' agreement to arbitrate is valid and enforceable, and that Plaintiff's claims are within the scope of that agreement. However, the undersigned will recommend that this Court decline to award Defendants the reasonable costs and attorneys' fees incurred in the drafting and filing of their motion.

**A.     The Validity of the Agreement to Arbitrate**

Defendants argue that the parties' agreement to arbitrate is valid and enforceable. (Document No. 13-1, pp. 8-12). In making this argument, Defendants assert, among other things,

7

that the DRP is a valid and binding contract under North Carolina law. (Document No. 13-1, pp. 9-12). Moreover, in arguing that the DRP is valid and binding under North Carolina law, Defendants make two contentions. (Document No. 13-1, pp. 10-12). First, Defendants contend that Plaintiff agreed to be bound by the DRP when he signed—by electronic signature—"an agreement describing and outlining the DRP and the obligation to arbitrate claims." (Document No. 13-1, p. 11) (citing Document 13-6, pp. 1-2). Second, Defendants contend that "Plaintiff's offer of employment" and "the fact that the DRP binds Defendants, their subsidiaries, and their employees to arbitrate employment disputes" both constitute sufficient consideration to make the DRP a valid and binding contract under North Carolina law. (Document No. 13-1, p. 12).

Plaintiff does not seem to take a clear stance on the validity and the enforceability of the parties' agreement to arbitrate. As the undersigned mentions above, in Plaintiff's most recent filing, Plaintiff refers to the DRP as "legal and valid contract" and requests that this Court grant him a TRO "based on [a] written provision in the DRP." (Document No. 22, pp. 3, 6). But in that same filing, Plaintiff also alleges that Defendant's breach of "the DRP … was so maliciously grievous that [it] made the DRP illusory and unconscionable" and requests that this Court find the DRP "illusory and unconscionable and therefore unenforceable." (Document No. 22, pp. 6, 7). Moreover, because Plaintiff does not refer to any specific DRP provisions that this Court should find unenforceable, Plaintiff appears to ask this Court to enforce part of the DRP while also finding the DRP unenforceable as a whole.

In Martin v. Vance, 514 S.E.2d 306 (N.C. Ct. App. 1999), the Court of Appeals of North Carolina held that the parties' agreement to arbitrate disputes arising from an employer-employee relationship constituted a valid contract. A valid contract requires mutual assent and consideration. See id. at 309-10. In Martin, the court found that mutual assent existed because the language of

the agreement that the plaintiff signed demonstrated "a clear and unambiguous certification of … willingness to submit disputes arising from her employment [to arbitration]," and there was thus no need to "look beyond the writing itself to determine whether there was mutual assent to the agreement." Id. at 309 (internal quotation marks omitted). Moreover, the court found that because both employer and employee agreed to be bound by the agreement to arbitrate, there was "sufficient consideration to uphold the agreement." Id. at 310 (citing Johnson v. Circuit City Stores, 148 F.3d 373 (4th Cir. 1998)).

In light of Martin, the undersigned finds that the parties have entered into a valid and enforceable agreement to arbitrate. The agreement to arbitrate that Plaintiff signed—by electronic signature—contains the following language:

> I CONSENT TO THE EXCLUSIVE **FINAL AND BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL DISPUTES (as defined in the DRP) INCLUDING ALL LEGAL CLAIMS**, past, present or future, arising out of, relating to, or concerning my employment with Xerox Business Services, LLC ("XBS"), terms and conditions of XBS employment, and/or separation or termination of XBS employment that: (1) I may have against XBS …; and (2) XBS may have against me …
>
> XBS AND I AGREE THAT:
>
> **DISPUTES WILL BE ARBITRATED RATHER THAN DECIDED BY A COURT OR JURY** …
>
> I understand that references in this Agreement to XBS include all XBS parent, subsidiary and affiliated entities, predecessors … and successors.

(Document No. 13-6, p. 1) (emphasis in original).[4] The undersigned finds that this language demonstrates "a clear and unambiguous certification of … willingness to submit disputes arising from [Plaintiff's] employment [to arbitration]," and there is thus no need to "look beyond the

---

[4] Defendants are each a parent corporation, affiliate, predecessor, or successor of XBS. See (Document No. 13-3, pp. 2-3).

writing itself to determine whether there [is] mutual assent to the agreement." Martin, 514 S.E.2d at 309 (internal quotation marks omitted).  Moreover, the undersigned finds that because both Plaintiff and Defendants agree to be bound by the agreement to arbitrate, there is "sufficient consideration to uphold the agreement." Id. at 310; see also Johnson, 148 F.3d at 378.

In addition, the undersigned notes—in response to Plaintiff's request that Defendants "produce Plaintiff's 'wet signature' on any arbitration agreement," (Document No. 11, p. 4)—that the parties' agreement to arbitrate is no less valid because Plaintiff signed by electronic signature. As North Carolina law provides, a "signature may not be denied legal effect or enforceability solely because it is in electronic form." N.C.G.S. § 66-317(a).

Finally, Plaintiff has not persuaded the undersigned that the agreement to arbitrate is "illusory and unconscionable and therefore unenforceable." (Document No. 22, p. 7).  First, the undersigned finds above that sufficient consideration supports the agreement to arbitrate, and as that finding demonstrates, the undersigned disagrees with the assertion that the agreement is illusory or otherwise lacking in mutuality.  See Martin, 514 S.E.2d at 310-11.  Second, Plaintiff appears not to actually argue that the agreement itself is unconscionable.  Rather, Plaintiff appears to argue that the Defendants' alleged *breach* of contract is an "egregious act [that] is … unconscionable." (Document No. 22, p. 6) (emphasis removed).

Simply put, a breach of a contract does not make that contract unconscionable.  Instead, a contract is unconscionable because of both unequal bargaining and oppressive terms.  See Brenner v. Little Red Sch. House, Ltd., 274 S.E.2d 206, 210 (N.C. 1981).  But even assuming that Plaintiff argues that the agreement to arbitrate itself—as opposed to Defendants' alleged breach of contract—is unconscionable, the undersigned is not persuaded that Plaintiff has met his burden of demonstrating unconscionability, especially in light of the well-established "liberal federal policy

10

favoring arbitration." Concepcion, 563 U.S. at 339; see also Torrence v. Nationwide Budget Fin., 753 S.E.2d 802, 811 (N.C. App. 2014) (opining that underlying Concepcion and American Express Co. v. Italian Colors Rest., 570 U.S. 228 (2013), was a "broader theme that unconscionability attacks that are directed at the arbitration process itself will no longer be tolerated").

**B.      Plaintiff's Claims and the Scope of the Agreement to Arbitrate**

Defendants also argue that Plaintiff's claims fall within the scope of the agreement to arbitrate. (Document No. 13-1, pp. 12-13). In support of this argument, Defendants assert that the "DRP provides the exclusive and binding method by which workplace disputes are resolved." (Document No. 13-1, p. 12). In addition, Defendants note the section of the DRP that lists the claims to which the DRP applies. (Document No. 13-1, pp. 12-13) (citing Document No. 13-14, pp. 6-7). This section lists claims of breach of contract, as well as claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act. (Document No. 13-14, p. 6). Defendant therefore concludes that "Plaintiff's claims are included in the express language of the DRP." (Document No. 13-1, p. 13).

Plaintiff appears not to dispute that his claims fall within the scope of the agreement to arbitrate. Instead, Plaintiff appears to focus his efforts on seeking a TRO, which he asserts will allow him to engage the "Office of the Ombudsman" and "effectively render the Defendant[s'] motion to compel arbitration moot." (Document No. 15, p. 3). Moreover, Plaintiff asserts this Court should deny Defendants' "motion to compel arbitration based on the written provision in the DRP [allowing for the grant of] … a [TRO]." (Document No. 22, p. 6). As Defendants point out, "Plaintiff's request to follow the … [DRP] appears to be a concession that the DRP does in fact govern this dispute." (Document No. 16, p. 2).

11

In any event, the undersigned finds that Plaintiff's claims fall within the scope of the parties' agreement to arbitrate. In addition to the provisions of the DRP that Defendants cite, the agreement to arbitrate that Plaintiff signed expressly provides that the agreement covers claims for breach of contract, as well as claims for violations of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act. (Document No. 13-6, p. 1). These are precisely the types of claims that Plaintiff makes. (Document No. 11, p. 3); (Document No. 18, pp. 2-3). Thus, Plaintiff's claims clearly fall within the scope of the parties' agreement to arbitrate.

## C. Defendants' Fed.R.Civ.P. 11 Request for Reasonable Costs and Attorneys' Fees

In addition to moving to compel arbitration, Defendants request that this Court "award [them] the reasonable costs and attorneys' fees incurred in drafting and filing [their] [m]otion." (Document No. 13-1, p. 15). Defendants purport to make this request pursuant to Fed R. Civ. P. 11(b). (Document No. 13-1, p. 15).

The undersigned will decline to recommend that this Court award Defendants the reasonable costs and attorneys' fees incurred in drafting and filing their motion. In so declining, the undersigned calls Defendants' attention to the text of Fed.R.Civ.P. 11(c)(2), which provides that a "motion for sanctions must be made *separately from any other motion* and must describe the specific conduct that allegedly violates Rule 11(b)." Fed.R.Civ.P. 11(c)(2) (emphasis added). Lest there be any doubt what this language requires, the advisory committee's notes further clarify that Fed.R.Civ.P. 11 "provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion." Fed.R.Civ.P. 11, advisory committee's note to 1983 amendment, subdivisions (b) and (c).

12

Here, Defendants have not complied with Fed.R.Civ.P. 11(c)(2). Rather than make their motions for sanctions in a separate filing, Defendants have "simply included [it] as an additional prayer for relief contained in another motion"—exactly as Fed.R.Civ.P. 11(c)(2) proscribes. Id. Under these circumstances, and especially noting that Plaintiff is appearing *pro se*, the undersigned is not persuaded that an award of costs and fees is appropriate.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Second Motion To Compel Arbitration and Dismiss Or In The Alternative, To Stay Proceedings Pending Arbitration" (Document No. 13) be granted in part and denied in part. Specifically, the undersigned recommends that the motion be granted insofar as it requests that this Court compel arbitration and dismiss Plaintiff's Amended Complaint, and that the motion be denied insofar as it requests that this Court award Defendants the reasonable costs and attorneys' fees that they incurred and insofar as it seeks to stay this matter.

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion … for a Temporary Restrain[ing] Order" (Document No. 15) and Plaintiff's "Motion to Dismiss Xerox's Dispute Resolution Plan …" (Document No. 18) be **DENIED AS MOOT**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed. R. Civ. P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the

District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 31, 2018

David C. Keesler
United States Magistrate Judge